**In re UNITED STATES of America, Petitioner.**

No. 87–5383.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 27, 1988.

Decided April 14, 1989.

As Amended April 14, 1989.

Freddi Lipstein, Atty., Dept. of Justice, with whom John R. Bolton, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., Washington, D.C., were on the petition for a writ of mandamus. Larry L. Gregg and Barbara Herwig, Atty., Dept. of Justice, Washington, D.C., also entered appearances for petitioner.

Stuart A.C. Drake, with whom Alfred Winchell Whittaker, Timothy S. Hardy, Ronald A. Stern, Geoffrey F. Aronow, Arthur Spitzer, and Elizabeth Symonds, Washington, D.C., were on the memorandum in opposition to petition for writ of mandamus.

Before MIKVA and D.H. GINSBURG, Circuit Judges, and MAX ROSENN,* U.S. Senior Circuit Judge for the Third Circuit.

Opinion for the court filed by Senior Circuit Judge ROSENN.

Opinion concurring in part and dissenting in part filed by Circuit Judge D.H. GINSBURG.

MAX ROSENN, Circuit Judge:

This appeal presents the classic conflict between the public interest in preserving the secrecy of "classified" government information and the private interest of the litigant. The primary issue is whether the United States Attorney General's formal invocation of the state secrets privilege before even filing an answer and responding to discovery requires dismissal of plaintiff's complaint.

Plaintiff Lillie Albertson brought this action in July 1984 against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680 (1982) (FTCA), claiming injuries to her and her deceased husband from intelligence activities conducted by the Federal Bureau of Investigation from 1950 to 1964. Rather than answer the complaint, the Government moved to dismiss it on a number of grounds not material to the issue now before us. The district court denied the motion.

The Government then negotiated an extension of time to file an answer and entered into a stipulation scheduling discovery. The Government, however, neither answered nor proceeded with discovery, but instead filed a second motion to dismiss, this time asserting that the state

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

secrets doctrine precluded discovery and required dismissal of the suit. The district court denied this motion also, and directed the Government to answer the complaint.[1]

The Government now seeks mandamus from this court, asking us to recognize the applicability of the state secrets privilege and to direct the district court to dismiss the suit. We deny the petition for mandamus.

## I.

The complaint alleges that the Government, through its COINTELPRO domestic surveillance and political action programs, committed torts against plaintiff and her deceased husband actionable under New York law.[2] Among her claims, plaintiff includes intentional infliction of emotional distress, invasion of privacy, prima facie tort, and independent tort. *See* Complaint at ¶¶ 19–36.

Plaintiff's husband, William Albertson, was a United States citizen until his death in 1972. He was also a member of the Communist Party of the United States of America until 1964. Plaintiff alleges that from 1950 to 1964 she and her husband were the targets of an FBI investigation that culminated in a scheme designed to embarrass them in the eyes of the Communist Party and to discredit the Party itself. In 1964, she claims, the FBI, in a "snitch jacket" operation, planted a fictitious report in a car used by Albertson and his Party colleagues that made Albertson appear to be an FBI or police informant. When Party colleagues discovered the document, they expelled Albertson from the Party.[3] Plaintiff claims that as a result of the FBI operation, William Albertson lost not only his Party affiliation but also his

health, his job at a Party bookshop, and most of his friends.

In seeking dismissal of the complaint, the Government argued in the district court that matters at the core of plaintiff's claims and the Government's defenses to those claims constitute secrets of state that would be jeopardized if the case were to continue. The Government claimed an absolute privilege under the state secrets doctrine. In support of the Attorney General's formal invocation of the state secrets privilege, the Government submitted for the district court's *in camera* review a twenty-eight page, classified affidavit by James H. Geer, the assistant director of the FBI's Intelligence Division. The district court denied the motion to dismiss.

After unsuccessfully appealing the district court's decision not to dismiss,[4] the Government petitioned this court for mandamus directing the district court to vacate its order and dismiss the complaint. Another panel of this court ordered the district court to review the confidential Geer affidavit and to explain its ruling denying the motion to dismiss. The district court did so in a memorandum opinion. We must now decide whether mandamus is appropriate in this case.

## II.

■ The state secrets privilege is a common law evidentiary rule that protects information from discovery when disclosure would be inimical to the national security. Although the exact origins of the privilege are not certain, *see* Note, *The Military and State Secrets Privilege: Protection for the National Security or Immunity for the Executive?*, 91 Yale L.J. 570, 571 (1982), the privilege in this country has its initial

---

1. Rather than answer, the Government appealed from the denial of its second motion to dismiss. On October 2, 1987, a motions panel of this court dismissed the appeal as interlocutory, *Albertson v. United States*, No. 87–5178, slip op. (D.C.Cir. Oct. 2, 1982) (per curiam), and subsequently denied a petition for rehearing in banc.

2. Before bringing this action in federal district court, plaintiff sought administrative relief under the FTCA. Respondent's brief at 8. Her claim, filed in 1977, was denied in 1984.

3. Plaintiff has requested and received documents under the Freedom of Information Act, 5 U.S.C. § 552, acknowledging the FBI's activities against her and her husband. *Albertson v. Department of Justice,* Civil Action No. 76–1302. *See* Complaint at ¶ 17 and Exhibits 1–4 to Respondent's brief.

4. *See supra* note 1.

roots in Aaron Burr's trial for treason, *United States v. Burr*, 25 F.Cas. 30 (C.C.D. Va.1807), and has its modern roots in *United States v. Reynolds*, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953). In *Reynolds* plaintiffs brought a civil action against the United States for the wrongful death of their civilian husbands in the crash of a military airplane, and requested discovery of the Government's accident report and related documents. The Government initially claimed that Air Force Regulations barred disclosure of the information but then further objected on the basis of a formal "Claim of Privilege" against revealing military secrets. The district court ordered the Government to produce the documents so that the court might determine whether they contained privileged material. The Government refused, and so the court ordered, under Fed.R.Civ.P. 37, that the fact of negligence would be taken as established and entered final judgment for the plaintiffs. The court of appeals affirmed. 192 F.2d 987 (3d Cir.1951).

The United States Supreme Court reversed, holding that the documents were privileged under the state secrets doctrine. 345 U.S. at 10, 73 S.Ct. at 533. In attempting to define the parameters of the states secrets privilege, the Court laid down principles that remain substantially intact this day. The privilege belongs to the government, and may be asserted by the government even when it is not a party to the case. *See, e.g., Fitzgerald v. Penthouse Int'l, Ltd.*, 776 F.2d 1236 (4th Cir.1985); *Farnsworth Cannon, Inc. v. Grimes*, 635 F.2d 268 (4th Cir.1980) (in banc). To successfully invoke the privilege, the head of the department having control over the matter must make a formal claim of privilege after actual personal consideration of the matter. *Reynolds*, 345 U.S. at 7–8, 73 S.Ct. at 531–32.

Mere compliance with the formal requirements, however, is not enough. "To some degree at least, the validity of the government's assertion must be judicially assessed." *Molerio v. Federal Bureau of Investigation*, 749 F.2d 815, 822 (D.C.Cir. 1984). The court itself must determine whether the circumstances are appropriate for allowing the claim; such a judicial enterprise requires delicacy, so as not to "forc[e] a disclosure of the very thing the privilege is designed to protect." *Reynolds*, 345 U.S. at 8, 73 S.Ct. at 532 (footnote omitted). Yet a court must not merely unthinkingly ratify the executive's assertion of absolute privilege, lest it inappropriately abandon its important judicial role. "Judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." *Id.* at 9–10, 73 S.Ct. at 532–33. To properly fulfill its obligations, while according the " 'utmost deference' " to the executive's expertise in assessing privilege upon grounds of military or diplomatic security, *see Halkin v. Helms*, 598 F.2d 1, 9 (D.C.Cir.1978) (*Halkin I*) (quoting *United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974)), a court must uphold the privilege if the government shows that "the information poses a reasonable danger to secrets of state." *Halkin v. Helms*, 690 F.2d 977, 990 (D.C.Cir.1982) (*Halkin II*).

Identifying the harm that disclosure would do has become an increasingly complicated task as intelligence gathering has become more highly sophisticated. As this court has recognized:

It requires little reflection to understand that the business of foreign intelligence gathering in this age of computer technology is more akin to the construction of a mosaic than it is to the management of a cloak and dagger affair. Thousands of bits and pieces of seemingly innocuous information can be analyzed and fitted into place to reveal with startling clarity how the unseen whole must operate.

*Halkin I*, 598 F.2d at 8. This court applies an appropriately narrow standard of review, and will uphold a claim of privilege for information that standing alone may seem harmless, but that together with other information poses a reasonable danger of divulging too much to a "sophisticated intelligence analyst." *Id.* at 10 (sustaining claim of state secrets privilege with respect to mere fact of interception of plaintiffs'

foreign communications by the National Security Agency).

Moreover, in assessing the privilege in these modern times, this court does not limit itself to a narrow conception of what constitutes a state secret. Going beyond the "military secrets" at stake in *Reynolds*, 345 U.S. at 11, 73 S.Ct. at 533, this court has recognized that information protected under the state secrets doctrine includes "information that would result in 'impairment of the nation's defense capabilities, disclosure of intelligence-gathering methods or capabilities, and disruption of diplomatic relations with foreign governments.'" *Molerio*, 749 F.2d at 820–21 (quoting *Ellsberg v. Mitchell*, 709 F.2d 51, 57 (D.C.Cir.1983) (footnotes omitted), *cert. denied sub nom. Russo v. Mitchell*, 465 U.S. 1038, 104 S.Ct. 1316, 79 L.Ed.2d 712 (1984)).

 Once successfully invoked, the effect of the privilege is completely to remove the evidence from the case. *Ellsberg*, 709 F.2d at 65. When the government is not a party, " '[t]he result is simply that the evidence is unavailable, as though a witness had died, and the case will proceed accordingly, with no consequences save those resulting from the loss of the evidence.'" *Id.* at 64 (footnote omitted) (quoting *McCormick's Handbook of the Law of Evidence* 233 (E. Cleary ed. 1972)). The result is the same when the government is a party; the evidence is simply disregarded. Notions of sovereign immunity preclude any further adverse consequence to the government, such as alteration of procedural or substantive rules. *Id.; see also Salisbury v. United States*, 690 F.2d 966, 975 (D.C.Cir.1982) (" '[W]hen the government is defendant, as under the Tort Claims Act, an adverse finding cannot be rendered against it as the price of asserting an evidentiary privilege. This is not one of the terms upon which Congress has consented that the United States be subjected to liability.' ") (quoting *McCormick's Handbook of the Law of Evidence* 234 (E. Cleary ed. 1972)).

 The privilege, it is clear, is absolute. "No competing public or private interest can be advanced to compel disclosure." *Ellsberg*, 709 F.2d at 57. "[E]ven the most compelling necessity cannot overcome the claim of privilege," *Reynolds*, 345 U.S. at 11, 73 S.Ct. at 533, because the "balance has already been struck" in favor of protecting secrets of state over the interests of a particular litigant. *See Halkin II*, 690 F.2d at 990. Because of the serious potential for defeating worthy claims for violations of rights that would otherwise be proved, the privilege is " 'not to be lightly invoked.' " *Id.* (quoting *United States v. Reynolds*, 345 U.S. 1, 7, 73 S.Ct. 528, 531, 97 L.Ed. 727 (1953)). The "broad sweep" of the privilege, *see Ellsberg*, 709 F.2d at 57, likewise requires that the privilege not be used to shield any material not strictly necessary to prevent injury to national security, *id.*, and counsels that "whenever possible, sensitive information must be disentangled from nonsensitive information to allow for the release of the latter." *Id.* (footnote omitted).

 The effect of a valid claim of privilege on the outcome of a particular case depends on the purpose that the privileged information would have served. If the information is essential to establishing plaintiff's prima facie case, dismissal is appropriate. *See Halkin II*, 690 F.2d at 998–99 (affirming dismissal of suit because, without privileged information proving whether plaintiffs' communications were intercepted by government, plaintiffs could not establish standing); *Farnsworth Cannon, Inc. v. Grimes*, 635 F.2d 268, 281 (4th Cir.1980) (in banc) (affirming dismissal of complaint because plaintiff could not make out prima facie case of tortious interference with contract without resort to privileged information). If, on the other hand, the information related not to the plaintiff's claim, but rather to the defense, summary judgment against the plaintiff is proper if the district court decides that the privileged information, if available to the defendant, would establish a valid defense to the claim. *See Molerio*, 749 F.2d at 825 (upholding summary judgment against plaintiff when privileged information presented a complete defense to plaintiff's claim that the FBI had

violated his first amendment rights in refusing to hire him because of his father's political beliefs).

Dismissal of a suit, and the consequent denial of a forum without giving the plaintiff her day in court, however, is indeed draconian. "[D]enial of the forum provided under the Constitution for the resolution of disputes, U.S. Const. art. III, § 2, is a drastic remedy that has rarely been invoked." *Fitzgerald v. Penthouse Int'l, Ltd.,* 776 F.2d 1236, 1242 (4th Cir.1985). The Government in this case, however, asks for exactly that. Through the extraordinary means of a petition for mandamus, the Government urges us to direct the district court to dismiss the plaintiff's complaint merely on the basis of its unilateral assertion that privileged information lies at the core of this case, which affects both the plaintiff's ability to establish her claims and the government's ability to defend itself. Revised petition for writ of mandamus at 16.

As case law demonstrates, this court has not hesitated vigorously to protect genuinely privileged material. *See Molerio,* 749 F.2d at 822 (holding material tending to establish FBI's reason for not hiring plaintiff privileged under state secrets doctrine); *Ellsberg,* 709 F.2d at 59 (documents describing electronic surveillance of plaintiffs held privileged); *Halkin II,* 690 F.2d at 994–95 (information regarding surveillance of plaintiffs held privileged); *Halkin I,* 598 F.2d at 10 (state secrets privilege bars proof that particular communications by plaintiffs were intercepted by NSA). In each of those cases, however, a final decision had been rendered by the district court, and this court addressed the merits of the decision. *See Molerio,* 749 F.2d at 826 (affirming dismissal on ground of privilege after the FBI answered the complaint and complied with discovery requests, although redacting many of the documents produced to eliminate information that would jeopardize state secrets or the national security); *Ellsberg,* 709 F.2d at 70 (reversing dismissal); *Halkin II,* 690 F.2d

at 984, 1009 (affirming dismissal after the parties had fought "the bulk of their dispute on the battlefield of discovery"); *Halkin I,* 598 F.2d at 5 (affirming partial dismissal and reversing decision rejecting privilege that was certified as interlocutory appeal).

The issue at hand, however, arrives by a different procedural route. Here the Government is not appealing a final order, the merits of which clearly would be reviewable.[5] Rather, what lies before us now is a petition for mandamus. Therefore, before we may address the merits of the state secrets claim, we must first determine whether this case presents an appropriate occasion for the rare exercise of our mandamus power. It is to that question we now turn.

### III.

The All Writs Act, empowering federal courts to issue writs of mandamus, provides:

> The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

28 U.S.C. § 1651(a) (1982). Although traditionally mandamus is used only to confine an inferior court to the lawful exercise of its prescribed jurisdiction or to compel it to exercise jurisdiction when required, *Will v. United States,* 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967), courts "have not limited the use of mandamus by an unduly narrow and technical understanding of what constitutes a matter of 'jurisdiction.'" *Kerr v. United States District Court,* 426 U.S. 394, 402, 96 S.Ct. 2119, 2123–24, 48 L.Ed.2d 725 (1976) (citing *Will v. United States,* 389 U.S. at 95, 88 S.Ct. at 273); *see also Colonial Times, Inc. v. Gasch,* 509 F.2d 517, 523 (D.C.Cir.1975). Nevertheless, the principle remains that mandamus is an extraordinary and "dras-

---

5. There is no reviewable order because the district court denied the Government's motion to dismiss, and a panel of this court has already

held that decision to be interlocutory and nonreviewable under the final order rule. *See supra* note 1.

478

tic" remedy, *Kerr*, 426 U.S. at 402, 96 S.Ct. at 2123, that is justified only by "exceptional circumstances amounting to a judicial 'usurpation of power.'" *Will v. United States*, 389 U.S. at 95, 88 S.Ct. at 273.

The Government contends that the district court's refusal to dismiss Albertson's claim on the basis of the state secrets privilege presents an exceptional circumstance justifying mandamus. According to petitioner, the district court did not merely deny the motion to dismiss but denied the claim of privilege itself. Petitioner's supplemental memorandum at 5. Thus, petitioner concludes, continuation of plaintiff's action will inevitably result in disclosure of information that will compromise current foreign intelligence and counterintelligence investigative activities, will reveal confidential sources and methods, and will damage sensitive diplomatic relations with other nations. *Id.* at 11.

We believe, however, that the Government overstates its case. The district court did not reject the Government's assertion of privilege; on the contrary, in stating its reasons for denying the motion to dismiss, the court demonstrated a perceptive understanding of and wholesome respect for the state secrets privilege. First, the court noted that plaintiff's claim did not present a case where " 'the very subject matter of [the] litigation is itself a state secret.'" District Court's memorandum at 4 (citations omitted). Rather, it stated that this was a suit challenging the Government's conduct with respect to prolonged investigations of Albertson's personal and political affairs and in using the "snitch jacket". technique to have Mr. Albertson expelled from the Communist Party. *Id.*

Next, the court expressed its unwillingness at this early stage to determine the general relevancy of information alluded to by the Government in its assertion of the state secrets privilege, even after examining the Geer affidavit *in camera.* "Relevancy," it stated, "like privilege, is an evidentiary matter to be raised on an item-by-item basis as the parties' theories develop and the litigation evolves." District Court's memorandum at 5. The court also

relied on its own experience with litigation involving highly sensitive government information and its confidence that the Government's security concerns could be accommodated. *Id.* Thus, it decided that broad application of the privilege to all of petitioner's information, before the relevancy of that information has even been determined, was inappropriate at this early stage of the proceedings. The court decided that with evidentiary control the litigation could proceed without jeopardizing national security.

■ We agree with the district court that several factors justify its conclusion that an item-by-item determination of privilege will amply accommodate the Government's concerns. First, the information remains in the Government's custody, and the parties' discovery stipulation has preserved the Government's right to assert the privilege and to support its assertions by submissions of representative samples of documents for *in camera* review. Second, the parties have provided for the protection of third party privacy by agreeing to mechanisms limiting the disclosure of certain documents, including redaction of names. Thirdly, the case will be tried to the bench, a circumstance that will reduce the threat of unauthorized disclosure of confidential material. *See* District Court's memorandum at 5.

Finally, because much of the information sought by discovery has already been obtained by plaintiff under the Freedom of Information Act, 5 U.S.C. § 552 (1982), her counsel informed this court at oral argument that they believe they may be able to put in her case without pursuing additional discovery. Thus, the exercise of the privilege is substantially narrowed to whether the Government in its defense may be required to disclose state secrets. The Government retains a large measure of control and judgment over its own evidence, and this strongly reduces the possibility of unauthorized disclosure of confidential material. Because evidentiary privileges by their very nature hinder the ascertainment of the truth, and may even torpedo it entirely, their exercise "should in

every instance be limited to their narrowest purpose." E. Livingston, *State Secrets Privilege: The Executive Caprice Runs Rampant*, 9 Loy.L.A.Int'l & Comp.L.J. 445, 445 n. 5 (1987) (citation omitted).

■ Pursuant to the Government's request, we have also carefully reviewed the confidential Geer affidavit submitted *in camera.* This affidavit purports to explain why item-by-item determination of the applicability of the privilege would be inadequate to protect public interests. The affidavit ostensibly describes the harms that would be dealt to our nation's security and diplomatic interests were this case to continue through the normal course of litigation. After review of the Geer affidavit, however, we, like the district court, remain unpersuaded. Because of the long lapse of time, the release by the Government to plaintiff of important information under the Freedom of Information Act, and the difficulties of relating the relevance in substance and time of much of the information in the Geer affidavit to the case at hand, we cannot reasonably determine merely on the basis of this *in camera* affidavit that evidence of the Government's activities of twenty to thirty years ago will result in the disclosure of state secrets today. And, we are unconvinced that the district court would be unable to "disentangle" the sensitive from the nonsensitive information as the case unfolds. *See Ellsberg,* 709 F.2d at 57.

No allegation is made that the district court is usurping any power that it does not possess or that it is improperly exercising or failing to exercise jurisdiction. The Government has not presented any exceptional circumstance justifying the issuance of the extraordinary writ of mandamus to the district court. As our discussion above indicates, the district court acted well within its discretion in rejecting the Government's assertion in the Geer affidavit that item-by-item assessment of the privilege could not protect any national interests at stake in this litigation. *Cf. In re United States Department of Defense,* 848 F.2d 232, 233 (D.C.Cir.1988) (denying mandamus because district court did not abuse its discretion in appointing special master in Freedom of Information Act case).

Moreover, the state secrets question in this case largely turns on the facts of the case. The district court's refusal to dismiss did not demonstrate any "persistent or deliberate disregard of limiting rules," *National Right to Work Legal Defense v. Richey,* 510 F.2d 1239, 1243 (D.C.Cir.) (citations omitted), *cert. denied,* 422 U.S. 1008, 95 S.Ct. 2631, 45 L.Ed.2d 671 (1975), so as to command an exercise of our "supervisory" mandamus power. *Compare La Buy v. Howes Leather Co.,* 352 U.S. 249, 259–60, 77 S.Ct. 309, 315–16, 1 L.Ed.2d 290 (1957) (approving use of mandamus as means of supervisory control of district courts when necessary for proper judicial administration). Nor did the state secrets question addressed to the district court present an issue of first impression, "likely of significant repetition prior to effective review," *National Right to Work,* 510 F.2d at 1244, warranting an exercise of our "advisory" mandamus power. *Compare Schlagenhauf v. Holder,* 379 U.S. 104, 111, 85 S.Ct. 234, 239, 13 L.Ed.2d 152 (1964) (mandamus appropriate to review construction and application of Federal Rule of Civil Procedure 35(a) because district court order presented issue of first impression); *In re Von Bulow,* 828 F.2d 94, 97–98 (2d Cir. 1987) (mandamus appropriate when order compelling discovery of attorney-client communications raised "significant novel questions of law"); *In re Attorney General,* 596 F.2d 58, 64 (2d Cir.) (mandamus appropriate to review order adjudging United States Attorney General in contempt because it is "unusually important" case raising issues of first impression), *cert. denied sub nom. Socialist Workers Party v. Attorney General,* 444 U.S. 903, 100 S.Ct. 217, 62 L.Ed.2d 141 (1979). *See generally,* Note, *Supervisory and Advisory Mandamus Under the All Writs Act,* 86 Harv.L.Rev. 595 (1973).

## IV.

In sum, the Government has failed to demonstrate any exceptional circumstances justifying the rare exercise of our manda-

mus power in this case. We share the district court's confidence that it can police the litigation so as not to compromise national security. And, although we stand ever ready to right any wrong that abridges the rights and privileges of a party to a litigation, we do not presume to intrude upon the district court's authority to protect those rights and privileges in the first instance, particularly when the court demonstrates a willingness and ability to do so. The petition for mandamus is denied.

D.H. GINSBURG, Circuit Judge, concurring and dissenting:

Because any further discovery in this action would inevitably lead to disclosure of information protected by the state secrets privilege, I dissent from the judgment insofar as it fails to direct the district court to vacate the portion of its March 16, 1987 order that directs the parties to proceed with discovery. I concur in the judgment insofar as it denies a writ of mandamus directing the district court to dismiss plaintiff's complaint.[1]

## I. DISCOVERY

From my review of the affidavit of Assistant Director (Intelligence Division) Geer, submitted by the Government, I think it perfectly clear that any further discovery in this action will occasion

> ... disclosures [that] not only would pose a serious risk to the personal safety of those who have assisted the government in its investigations but would have an adverse impact on current foreign intelligence activities of this government, affect the conduct of foreign relations and cause serious damage to the national security.

Geer Aff. at 4, Paragraph 3. Nor can any system of item-by-item rulings by the district court be concocted so as to avoid these most untoward consequences. Unfortunately, I am unable fully to explain my disagreement with the court on these points without discussing in some detail the contents of the classified affidavit submitted by the Government for *in camera* review by the court, and thus the bulk of this opinion will be available only to a limited readership. I do hope, however, that it will serve to persuade the court *en banc* or, failing that, the Supreme Court of the error of today's decision.

[text deleted]

## II. CONTINUATION OF THE LITIGATION

The Supreme Court has clearly stated that "public policy forbids the maintenance of any suit in a court of justice, the trial of which would inevitably lead to the disclosure of matters which the law itself regards as confidential, and respecting which it will not allow the confidence to be violated." *Totten v. United States*, 92 U.S. (2 Otto) 105, 107, 23 L.Ed. 605 (1875). *See also Weinberger v. Catholic Action of Hawaii/Peace Education Project*, 454 U.S. 139, 146–47, 102 S.Ct. 197, 203–04, 70 L.Ed. 2d 298 (1981). Accordingly, on several occasions, this court has indicated that where maintenance of a claim depends upon discovery that would necessarily compromise state secrets, the claim should be dismissed outright. In *Salisbury v. United States*, 690 F.2d 966 (D.C.Cir.1982), for example, the district court found, and this court agreed, that "maintenance of the action depends upon production of the requested information...." *Id.* at 977. The court therefore held that, "under these circumstances, dismissal is the appropriate response." *Id. See also Halkin v. Helms*, 598 F.2d 1, 9 (D.C.Cir.1978) (since "plaintiffs' suit depends upon the discovery of [privileged] information," the proper remedy is dismissal of the suit); *Halkin v. Helms*, 690 F.2d 977, 990 (D.C.Cir.1982) (because plaintiffs conceded that successful invocation of the state secrets privilege made it impossible to go forward with their claims, dismissal was the appropriate remedy once the court upheld the claim of privilege). *Cf. id.* at 998 (where plaintiffs could not establish standing due to invocation of

---

**1.** Substantial portions of this opinion are not being published because they rely upon classi- fied information.

privilege, proper remedy was to dismiss their claims).

At the same time, an action as to which a certain avenue of discovery would compromise state secrets need not be dismissed if an alternative, non-sensitive avenue of discovery is available. In *United States v. Reynolds*, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953), the Supreme Court held that the Government could prevent discovery of a sensitive report sought by plaintiffs in their wrongful death case arising out of the crash of a military aircraft. The Court noted, however, that a readily available alternative to disclosure of the sensitive information existed: the Government had offered for deposition the three survivors of the contested plane crash, an offer rejected by plaintiffs in their zeal to obtain the secret report. The Court noted that the alternative discovery route "might have given respondents the evidence to make out their case without forcing a showdown on the claim of privilege, *id.* at 11, 73 S.Ct. at 533, and suggested that in the proceedings on remand "it should be possible for respondents to adduce the essential facts without resort to material touching upon military secrets." *Id.*

In this case, because certain documents were released to plaintiff under the FOIA, we are somewhere between *Reynolds*, on the one hand, and, on the other, *Totten* and our own outright dismissal cases. Here, unlike in *Reynolds*, there are no avenues of discovery that are not blocked by the state secrets privilege * * *. Here, unlike *Totten* and *Salisbury*, however, an order discontinuing discovery would not necessarily spell the end of the litigation. At oral argument, plaintiff indicated that she was prepared to proceed without any further discovery, since the information obtained through her FOIA request is sufficient to make out a *prima facie* case on her claims under New York tort law. Denying discovery, but letting the action go forward, is simply a less drastic solution than the outright dismissal authorized by our previous cases. *See Ellsberg v. Mitchell*, 709 F.2d 51, 65 (D.C.Cir.1983) ("dismissal of the relevant portion of the suit would be proper only if the plaintiffs were manifestly un-

able to make out a *prima facie* case without the requested information"). *Cf. Attorney General of the U.S. v. The Irish People, Inc.*, 684 F.2d 928, 950 (D.C.Cir. 1982) ("[E]ven if a defendant would normally be entitled to discovery, it does not follow that, if there can be no discovery in the particular case, dismissal is the only choice available to the court") (declining to dismiss civil claim brought by Attorney General where defendant, due to successful assertion of state secrets privilege, could not gain access to documents in aid of its defense).

### III. THE GOVERNMENT'S DEFENSES

The Government has already advanced several lines of defense in this case, including the New York statute of limitations, various express and implied exceptions to the FTCA, and failure to state a claim under New York tort law. *See* Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss, Doc. No. 22, D.D.C. No. Civ. 84–2034. Assuming that the action goes forward, the Government can re-assert each of these defenses in open court in a motion for summary judgment; none of them requires disclosure of state secrets.

In the Geer Affidavit, the Government alludes to another line of defense * * *. In order to advance this defense, the Government would need to rely on privileged materials.

In *Ellsberg*, this court made clear that a government party does not forfeit a meritorious defense merely because it would need to rely on privileged materials in order to assert it. Rather, the court held, the trial court may in such a situation consider the merits of the privileged defense on an *ex parte, in camera* basis. 709 F.2d at 69–70 & n. 78. There is no reason why the Government in this case, to the extent that its defense rests upon materials covered by its state secret privilege, cannot use the *in camera* procedure suggested in *Ellsberg*.

This is not a case like *Molerio v. Federal Bureau of Investigation*, 749 F.2d 815, 825 (D.C.Cir.1984), where this court, based

upon its own review of the privileged materials supporting the Government's defense, could determine that, notwithstanding circumstantial evidence supporting plaintiff's *prima facie* case, plaintiff's claim had no merit, and that it would be "a mockery of justice" to permit the action to proceed. Here it is not at all clear that the Government's [secret] defense is dispositive (or even meritorious * * * under New York law). Thus, there is simply no reason why plaintiff cannot go forward with her claim based upon the evidence she now has, subject to the Government's right to present any secret defense to the district court *in camera.*

### IV. MANDAMUS

Mandamus is unquestionably an extraordinary remedy, "meant to be used only in the exceptional case," *Bankers Life & Casualty Co. v. Holland,* 346 U.S. 379, 383, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953), and not as "a substitute for an appeal." *Schlagenhauf v. Holder,* 379 U.S. 104, 110, 85 S.Ct. 234, 238, 13 L.Ed.2d 152 (1964). Equally clearly, it seems to me, mandamus is the uniquely appropriate way to correct the district court's error in this case. We have already held that the court's order is not appealable under 28 U.S.C. § 1291, *Albertson v. United States,* No. 87–5178, slip op. (D.C.Cir. Oct. 2, 1987), and the district court has denied the Government's request for certification under 28 U.S.C. § 1292. Even if the Government refuses to comply with the district court's order to proceed with discovery and is held in civil contempt, it is not at all clear that, as a party, it would have an immediate right to appeal. *See In re Von Bulow,* 828 F.2d 94, 98 (2d Cir.1987) (citing cases).

As the Court of Appeals for the Second Circuit recently noted, "the concern that a remedy after final judgment cannot unsay the confidential information that has been revealed" has led federal courts to favor the use of mandamus for review of interlocutory discovery orders calling for "the production of documents or testimony claimed to be privileged or covered by other more general interests in secrecy," such

as the attorney-client privilege and the common law protection for trade secrets. *Id.* at 99 (collecting cases). *See also Harper & Row Publishers, Inc. v. Decker,* 423 F.2d 487, 492 (7th Cir.1970) ("because an appeal after disclosure of the privileged communication is an inadequate remedy, the extraordinary remedy of mandamus is appropriate"). When, in such circumstances, the court perceives " 'an extreme need for reversal of the district court's mandate before the case goes to judgment,' the writ of mandamus provides an escape hatch from the finality rule [of 28 U.S.C. § 1291]." *Von Bulow,* 828 F.2d at 97. *Accord, Colonial Times, Inc. v. Gasch,* 509 F.2d 517, 526 (D.C.Cir.1975) (mandamus may issue to correct an error in a discovery order if the issue, "while important to the general course of the litigation, [is] ... collateral and thus lost to appellate review in fact if not in theory").

The interest at issue in this case is not simply that of a private party in maintaining the continued confidentiality of an attorney-client communication, but rather the compelling interest of the United States Government in maintaining, through a privilege protected by constitutional principles of separation of powers, [highly sensitive information]. The district court, in ordering discovery to go forward, disregarded the Government's legitimate and compelling interest in preventing disclosure of exceedingly sensitive national security information. This court should therefore grant the writ of mandamus and instruct the district court to vacate the portion of its order directing the parties to proceed with discovery.